CARL VOHMANN et al., as Trustees under the Will of LOUISE POMMER, Deceased Respondents *v.* JOHN MICHEL et al., Appellants.

MORTGAGE — FORGED SATISFACTION, BY ONE OF THREE TESTAMENTARY TRUSTEES HOLDING MORTGAGE FOR BENEFIT OF THEIR TRUST, AND MISAPPROPRIATION BY HIM OF PROCEEDS THEREOF — ACTION TO HAVE DISCHARGED MORTGAGE REINSTATED — RIGHTS OF PARTIES. One of three testamentary trustees, who had loaned funds of the estate upon a mortgage payable to them individually, executed a satisfaction of the mortgage purporting to be signed by him and his co-trustees, the signature of one of them being forged and the other procured by fraud; thereupon the mortgagor, at the solicitation of such trustee, but in good faith and with no negligence on his part, paid the mortgage, although it was not due, borrowing the money for that purpose from a stranger to the transaction, who, believing that the satisfaction had been legally executed in good faith, took a new mortgage upon the same property to secure his loan. The money received from the payment of the mortgage was turned over to the defaulting trustee, who used it for his own purposes. His fraudulent discharge of the mortgage and the misappropriation of the money were discovered about a year later by his co-trustees, who were absent from the state most of the time and intrusted to him the possession of all the securities and practically the entire management of the trust estate. Whereupon they informed two of the four *cestuis que trustent*, who were then of age, who, in order to shield the defaulting trustee from prosecution, executed to his co-trustees releases from any liability for the acts of the defaulting trustee and gave the latter a receipt for their distributive shares of the trust estate and permitted him to resign, and, with their consent, to leave the country. One of the adult *cestuis que trustent* was thereafter appointed trustee in his place. More than a year later the three trustees began, in their representative capacity, an action against the mortgagor, the defaulting trustee and the holder of the new mortgage, to compel the reinstatement of the discharged mortgage as a valid lien. *Held*, that while the conduct of the trustees, in surrendering to the defaulting trustee the full control of the estate and their failure,

upon the discovery of his dishonesty, to compel him to make restitution, as well as their omission to promptly notify the holder of the new mortgage, and their conduct in taking releases from their *cestuis que trustent*, might be sufficient to create an estoppel against them individually, such acts did not constitute such an estoppel as to prevent them from enforcing, as trustees, the demands of the estate which they represent; also *held*, that the two adult *cestuis que trustent*, who released the defaulting trustee and his co-trustees from any liability for the acts of the former and permitted him to leave the country without making restitution, had bargained away their right to insist on a reinstatement of the lien of the mortgage so far as their interests are concerned, and that the plaintiffs, who represent their interests, can have no greater rights than they have; so that the discharged mortgage should be restablished as a lien and foreclosed for only one-half of the principal thereof, with interest, in favor of the two infant beneficiaries.

*Vohmann* v. *Michel*, 109 App. Div. 659, reversed.

(Argued May 8, 1906; decided June 12, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 8, 1905, which reversed so much of a judgment of Special Term as directed a dismissal of the complaint as to the first cause of action and granted a new trial.

This action was brought to compel the reinstatement as valid liens of two mortgages executed by the defendant Michel, which were procured to be satisfied of record by means of forged and fraudulent satisfaction pieces, executed by and at the instance of the defendant Carl Coenen, and to foreclose such mortgages. The defendant Coenen and the plaintiffs Mecke and Vohmann were the executors and trustees named in the will of Louise Pommer, deceased, who died on Staten Island on March 12th, 1897. By her will she devised her residuary estate to her executors and trustees in trust, to keep the same invested and pay the income to her four children until they should respectively become twenty-five years of age when each was to receive an equal share of such residuary estate. The executors and trustees duly qualified and entered upon their duties.

On or about February 15th, 1899, the executors and trustees, acting through one Cossmann, a real estate agent, loaned

to the defendant Michel the sum of $6,500 of the funds of the estate, and as security therefor took back a mortgage made to such trustees individually, due February 15th, 1902. Before this mortgage became due, and in November, 1900, Coenen prepared a satisfaction piece of this mortgage, signed his name to it, forged the signature of Vohmann thereto, and procured the signature of Mecke by false and fraudulent statements. Then Cossmann, who was a notary public, and who appears to have abetted Coenen in his dishonesty, executed an acknowledgment of the signatures of Mecke and Vohmann to the false satisfaction piece. At Coenen's request Cossmann procured the defendant Michel to pay the $6,500 loaned to him on the mortgage, although it was not then due. The money thus paid was turned over to Coenen, who used it for his own purposes. The defendant Michel paid this money in good faith to Cossmann, with whom he had dealt in the transaction and was guilty of no negligence in the matter.

The defendant Horrmann loaned to Michel the money to pay off this mortgage, believing that the satisfaction piece had been legally executed in good faith, and took from Michel a mortgage on the same property to secure his loan. The full amount of Horrmann's loan to Michel was $8,000.

Shortly after the execution of this first mortgage to the trustees by Michel, a second loan of $500 was made by the trustees to him, and he gave a second mortgage, which was paid off and discharged at the same time and in the same way as the first mortgage, the only difference being that the second mortgage was due at the time it was paid by Michel. The courts below have held that this payment of the second mortgage is good as against the estate, and there is no question as to its validity upon this appeal.

Coenen's two co-trustees, Vohmann and Mecke, spent most of their time out of this state, and only visited Staten Island at infrequent intervals. They intrusted to Coenen the possession of all the securities of their trust and practically the entire management of the trust estate. They did not discover Coenen's dishonesty or his fraudulent discharge of the mort-

gage referred to until about September 20th, 1901, about a year after the money had been stolen. When the discovery was made they informed Frank and Hermann Pommer, two of the children of Louise Pommer, deceased, and beneficiaries of the trust, of Coenen's dishonesty. At this time Hermann was about 23 years of age and Frank about 25. The other two children were infants. It appears that Coenen had married an adopted daughter of Louise Pommer and the children referred to him as " uncle." The defendant Michel, however, was not informed of the true state of affairs. In order to shield Coenen from prosecution, Frank and Hermann Pommer executed releases to Vohmann and Mecke, from any liability to them for losses occasioned by Coenen's dishonesty, and on October 3, 1901, they gave Coenen a receipt for their distributive shares of the trust estate. They permitted him to resign his trust on October 4, 1901, and consented to his leaving the country. Frank Pommer was appointed executor and trustee in his place, and is one of the plaintiffs in this action together with Vohmann and Mecke, the other two executors and trustees.

This action was commenced in February, 1903, over two years after the execution of the fraudulent satisfaction pieces, and more than one year after the discovery of the dishonesty of Coenen. The first cause of action relates to the first mortgage for $6,500 and the second to the $500. The Special Term dismissed the complaint on the ground that the plaintiffs were estopped from claiming that the mortgages were not properly satisfied of record. Upon appeal to the Appellate Division the dismissal of the first cause of action was reversed and a new trial granted as to that, but the judgment as to the second cause of action was affirmed and is not now questioned.

*J. Culbert Palmer* for appellants. The plaintiffs are estopped from denying the validity of the payment. (*Bank of Monongahela* v. *Weston*, 172 N. Y. 266 ; *C. Nat. Bank* v. *Bank of Commonwealth*, 50 N. Y. 590 ; *Blair* v. *Wait*, 69 N.

Y. 116; *People* v. *Bank of N. A.*, 75 N. Y. 562; *Collier* v. *Miller*, 137 N. Y. 332; *Viele* v. *Judson*, 82 N. Y. 33.) The trustees ratified the act of their agent Cossman and confirmed the act of their co-trustee Coenen in accepting payment of the amount secured by the mortgage. (*Jarvis* v. *M. B. Co.*, 53 Hun, 632; *Newton* v. *Bronson*, 13 N. Y. 594.) Coenen was authorized by the conduct and the long-continued absence of his fellow trustees to act alone in matters such as the one in question, and the payment was, therefore, valid. (*Egbert* v. *McGuire*, 36 Misc. Rep. 246.)

*Frederic W. Hinrichs* for respondents. The failure to inform the appellants of the wrongdoing of the trustee Coenen cannot bind the trust estate of Mrs. Pommer or the beneficiaries of the trust, her four children, two of whom were still infants when this action was brought. (*Ludington* v. *M. Nat. Bank*, 102 App. Div. 251; 182 N. Y. 522.) Trustees cannot estop the trust estate to undo a wrong perpetrated by one of their number. (*Keate* v. *Phillips*, L. R. [18 Ch. Div.] 560; Bigelow on Estoppel [4th ed.], 578; *F. N. Bank* v. *N. B. Bank*, 156 N. Y. 467; *Fritz* v. *City Trust Co.*, 72 App. Div. 532; *Carritt* v. *Real*, L. R. [42 Ch. Div.] 263.)

Werner, J. The appellants in this court concede that the calling in of the mortgage before it was due involved the exercise of a joint discretion by the trustees, in which the participation of them all was essential to protect any person dealing with them. The learned counsel for the appellants insists, however, that although the mortgage was called in before it was due, the trustees are estopped from challenging the validity of the transaction because of their surrender to Coenen of the full control of the trust estate, and their failure, upon the discovery of his dishonesty, to compel him to make restitution, as well as their omission to promptly notify the defendant Michel. We think this contention cannot be admitted. While the conduct of the appellants in these respects and in taking releases from their adult *cestuis que trustent* may be

quite sufficient to create an estoppel against them individually, we do not think their acts constitute such an estoppel as to prevent them from enforcing, as trustees, the demands of the estate which they represent. (*Ludington* v. *Mercantile Nat. Bank,* 102 App. Div. 251; affd. on opinion below, 182 N. Y. 522.)

If this were all that is shown by the record before us we should be compelled, notwithstanding the obvious hardships of the case, to concur in the conclusion reached by the learned Appellate Division. It appears, however, that at the time of the discovery of Coenen's dishonesty two of the beneficiaries of the trust estate were adults. Hermann Pommer was then about 23 years of age, and Frank C. Pommer was about 25. They were at that time fully informed of Coenen's misdeeds, and that his fraud and defalcation had entailed upon the estate a loss of about $21,000. With full knowledge of these facts they released the two trustees, Vohmann and Mecke, from all liability on account of Coenen's default, and gave to Coenen himself receipts for their distributive shares in the estate. They concurred with the two trustees in permitting Coenen to resign his trust without calling him to account, and consented to his leaving the country without making any attempt to compel restitution. They voluntarily released Vohmann and Mecke from all liability, although it was through their neglect of the duties of their trust that Coenen was afforded, to some extent at least, the opportunity to perpetrate his frauds, and in effect connived at Coenen's unmolested escape from prosecution. After having released all the guilty parties and acquiesced in all that had been done from the discovery of the irregularities in September, 1901, until the bringing of this action in February, 1903, they now seek to compel Michel, the innocent mortgagor, to bear the full burden of Coenen's wrongdoing in respect of this mortgage, although the mortgagor was not notified or given any opportunity to protect himself. We think it would be highly inequitable to permit the plaintiffs at this late day to disregard and disaffirm all that has been done by the two adult *cestuis que trust,* and to

proceed against these defendants in the same manner as they could have done if they had not formally acquiesced in Coenen's default. "Where the *cestui que trust* has assented to or concurred in the breach of trust, or has subsequently acquiesced in it, he cannot afterwards proceed against those who would otherwise be liable therefor." (Beach on Modern Eq. Juris. § 244; Perry on Trust, § 850; *Thompson* v. *Harrison*, 2 Bro. Ch. 164; *Kirby* v. *Taylor*, 6 Johns. Ch. 242.) In this connection it should be borne in mind that at the time these adult beneficiaries ratified the defaulting trustee's act they were entitled to the remainder of their shares of the trust fund, subject only to the contingency that they should arrive at the age of twenty-five years, a contingency which had occurred at the time of the trial. These remainders, therefore, were at the time of ratification subject to alienation and disposition by these two beneficiaries. We are, therefore, led to the conclusion that the adult beneficiaries, Hermann and Frank C. Pommer, have bargained away their right to now insist on a reinstatement of the lien of the mortgage so far as their interests are concerned, and that the plaintiffs, who represent their interests, can have no greater rights than they have.

The judgment of the Appellate Division should be reversed, and the judgment of the trial court modified by directing that the $6,500 mortgage be re-established as a lien and foreclosed for only one-half of that amount, with interest, in favor of the two infant beneficiaries. As so modified, the judgment of the trial court is affirmed, and the record is remitted to the Special Term with directions to render judgment in accordance with the views herein expressed, without costs of this appeal to either party as against the other.

CULLEN, Ch. J., O'BRIEN, HAIGHT, VANN and HISCOCK, JJ., concur; WILLARD BARTLETT, J., not sitting.

Judgment accordingly.